**VALLI KANE & VAGNINI LLP**
*Attorneys for Plaintiff*
**600 OLD COUNTRY ROAD**
**GARDEN CITY, NY  11530**
**(516) 203-7180**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Debbie Zagaja,

                Plaintiff,                Docket No. 15-CV-1017

      v.

VILLAGE OF FREEPORT, MIGUEL BERMUDEZ,    **COMPLAINT**
as both Chief of Police and in his individual capacity
ANDREW HARDWICK, AND ROBERT T. KENNEDY
as both Mayors and in their individual capacities.    **JURY TRIAL DEMANDED**


                Defendant.
----------------------------------------------------------------X

      Plaintiff, Debbie Zagaja, by and through her attorneys Valli Kane & Vagnini LLP, bring this action for damages and other legal and equitable relief from the Defendants for violation of the laws proscribing race, color, gender discrimination, and retaliation stating the following as Plaintiffs' claims against Defendant.

## JURISDICTION AND VENUE

      1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress

1

providing for the protection of civil rights, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. §§1981a, 1983 *et seq.*, as amended.  The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court in as much as this judicial district lies in a State in which the unlawful employment practices occurred.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and/or reside in this district.

## PARTIES

3. Plaintiff Debbie Zagaja ("Plaintiff") is an employee of Defendant Village of Freeport and resides in Merrick, New York.

4. Defendant Village of Freeport ("Freeport") is an employer whose principle place of business is located at 46 North Ocean Avenue, Freeport, NY.

5. Defendant Andrew Hardwick is the former Mayor of the Village of Freeport and an individual who currently resides in Freeport, New York.

6. Defendant Miguel Bermudez is the Chief of Police of the Village of Freeport and an individual who currently resides in Freeport, New York.

7. Defendant Robert T. Kennedy is the current Mayor of the Village of Freeport and an individual who currently resides in Freeport, New York.

## ADMINISTRATIVE EXHAUSTION

3. Plaintiff served a Notice of Claim on Defendant(s) Village of Freeport and Hardwick or about April 30, 2010.

4. On May 5, 2010 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); Charge No. 520-2010-02218.

5. Plaintiff received a notice of Right to Sue Letter from the EEOC on or about June 12, 2010.

6. On June 14, 2012 Plaintiff filed a retaliation charge against the Respondents; Charge No. 520-2012-02786.

7. On April 25, 2014 Plaintiff filed an amended retaliation charge against the Respondents; Charge No. 520-2012-02786

8. Plaintiff received a notice of Right to Sue Letter from the EEOC for her amended retaliation charge on or about December 8, 2014.

## STATEMENT OF FACTS

9. Plaintiff is a Caucasian female. She began her employment with the Village of Freeport's Police Department ("VFPD") in July of 1986 as a Police Officer. She is currently a Lieutenant.

10. In or around May 2010, Lt. Zagaja filed a charge of discrimination with the EEOC

3

alleging gender and race discrimination and retaliation.

11. In or around June of 2010, Lt. Zagaja received a Right to Sue letter from the EEOC.

12. On August 11, 2010, Lt. Zagaja filed a complaint of discrimination in the Eastern District of New York. In her Original Complaint, Lt. Zagaja claimed that she was being discriminated against by Mayor Andrew Hardwick and the Village of Freeport because she is a white female. This action is currently pending before the Honorable Judge Bianco and is styled as, *Zagaja v. Village of Freeport and Andrew Hardwick as both Mayor and in his individual capacity, Index No. CV-10-3660*.

13. Since the filing of the initial charge to the present, Lt. Zagaja has consistently been subjected to further discrimination and retaliation for her complaints.

14. Prior to Lt. Zagaja filing a lawsuit in 2010, Chief Bermudez repeatedly requested that Lt. Zagaja be part of his command staff (Deputy Chief and/or Assistant Chief). However, when Lt. Zagaja filed her lawsuit in 2010, Chief Bermudez ceased mentioning to then-Mayor Hardwick that he wanted Plaintiff in his command staff in retaliation for filing a lawsuit.

15. At the end of June 2010, after the initial EEOC charge was filed, Chief Bermudez designated Lt. Zagaja to be the department's "records manager officer." This is a title and responsibility held by the Village Clerk and has never been assigned to a police supervisor. Any issues with police department records has always been handled by the clerical department. Chief Bermudez's first order of business for Lt. Zagaja was to clear out thousands of files in the basement. A Lieutenant has never been given such menial labor. While Lt. Zagaja performed this task, a junior, male supervisor took on her role as Watch Commander. As a result of this physical

4

labor, Lt. Zagaja suffered a shoulder injury which resulted in a permanent disability.

16. On or about August 2010, in response to the lawsuit filed, Mayor Hardwick had a financial background check conducted by Customized Claims on Lt. Zagaja without her permission. No other employee was subjected to a financial background check.

17. In further retaliation for her complaints, in September 2010, Police Officer Cynthia Cummings, who campaigned for Mayor Hardwick, purposefully discarded Lt. Zagaja's work boots. When Lt. Zagaja reported the incident to Chief Bermudez, he said it was a civil matter and delayed the substantive investigation for one month. Despite Officer Cummings being disciplined, Lt. Zagaja had to wait until March 2012 to be reimbursed for the cost to replace her work boots.

18. In 2011, in response to tour bidding based on seniority, Lt. Zagaja's squad was changed requiring Plaintiff to overlap every shift with Police Officer Cummings who had purposefully discarded Plaintiff's work boots, falsely accused Lt. Zagaja of harassment, called her Queen B in front of subordinates and, in conversations with the Command Staff, threatened there would be repercussions due to her discipline over the boots. Lt. Zagaja complained to Ray Horton, then Deputy Chief and current Assistant Chief, and Chief Bermudez, but the squad assignments were not changed.  As a result, in order to avoid confrontation and conflict, Lt. Zagaja vacated the female locker room and stored personal items in a file cabinet drawer at the police desk. She also used a public bathroom instead of her locker room until Officer Cummings retired in 2013.

19. In February 2011, Lt. Zagaja received an invitation from the Mayor's Office to an event titled Black History Month: The Year of the Woman. The invitation was signed by Mayor Hardwick as "Your Humble Servant." Purposefully, Lt. Zagaja's title on the invitation was "Deputy Chief" despite her demotion one year earlier. This reference to her former command staff

5

position was a proverbial slap in the face. To her knowledge, no other police officers received an invitation.

20. On March 1, 2012, Chief Bermudez ordered Lt. Zagaja to assume the role of a street supervisor when a Sergeant on her tour is working light duty. That Sergeant would then work as Watch Commander in her place. At that time Lt. Zagaja worked with a Sergeant who was on extended modified assignment. Relinquishing her role as a Watch Commander was, in essence, another demotion. The command staff had other options such as payback tours, tour switches, and squad changes to remedy the issue. Instead, however, Plaintiff was directed to do so despite her rank, experience, and tenure.

21. Despite any procedure or policy, Plaintiff is the only Lieutenant to be ordered to work the street in place of a Sergeant who is on light duty. Lt. Zagaja has not worked the street as a Sergeant since she held the rank of Sergeant 13 years ago. Sergeants are not even ordered to replace police officers who are on light duty; however, in retaliation, the Village ordered Lt. Zagaja to replace a Sergeant.

22. During this time Lt. Zagaja also did not have a proper uniform shirt to wear on patrol. Despite being aware of Lt. Zagaja having a skin sensitivity, Chief Bermudez disregarded current uniform specs when placing the order and ordered Lt. Zagaja a lesser-quality shirt. Lt. Zagaja was intimately familiar with this process as she was instrumental in rewriting the specs years earlier to ensure that officers have a quality shirt to wear while out on patrol.

23. The Village currently has two locker rooms for males: a police officer locker room and a male superior officer locker room. As the only female superior officer, Lt. Zagaja was denied a female superior officer locker room. The Village, former Mayor Hardwick, and Mayor Kennedy

have, to date, failed to provide Lt. Zagaja with a female superior locker room in further discrimination and retaliation for her complaints.

24. In late 2009 and early 2010 Plaintiff legally tape recorded conversations to protect herself and the department, just as other members of the Village's Police Department have done including Chief Bermudez and Assistant Chief Horton. In retaliation, Chief Bermudez issued an order on January 12, 2012 forbidding Lt. Zagaja her right to record superiors, co-workers and village officials. No other departments in the Village were given such direction.

25. Between June 2010 and October 2013, Lt. Zagaja has been passed over for a promotion to the Assistant Chief position despite the vacancy and her experience and qualifications.

26. In October of 2011, Zina Leftenant, a Black female police officer with no supervisory experience, was assigned by Mayor Hardwick to work out of the office of the Chief of Police. In that role, she acted as a liaison between the Chief and the Mayor's office. Former Mayor Hardwick created this new title and position for Leftenant, assigned her Lt. Zagaja's prior administrative squad, provided her with an office, and made her answerable only to the Chief of Police. Her schedule, job duties, and position in the chain of command were those of an Assistant Chief.

27. Since the filing of her original complaint, Lt. Zagaja has been passed over for overtime assignments to fill Watch Commander vacancies. Sergeants are consistently granted 12-hour recalls as Watch Commanders on days that Lt. Zagaja is available to work.

28. In 2011 Chief Bermudez, in further retaliation and harassment, ordered Lt. Zagaja to re-write a complex and lengthy 2008 Domestic Violence Policy: General Order.  Despite Lt.

7

Zagaja spending an inordinate amount of time rewriting the order as instructed, Chief Bermudez has yet to approve the re-write and issue the order.

29. At the end of October 2012, despite her training in Incident Command, Lt. Zagaja was not given an opportunity to work during Superstorm Sandy. Lt. Zagaja was available at a moment's notice; however, Chief Bermudez chose to bring in and pay overtime to less qualified sergeants. In fact, the same Sergeant worked overtime for two days in a row while Lt. Zagaja was available for both and considered for neither. This unfair distribution of overtime is in violation of the PBA contract "overtime distribution."

30. On July 5, 2013, Chief Bermudez informally offered Lt. Zagaja the Deputy Chief position. Chief Bermudez made the offer on a Friday night at 9 p.m. when he was off duty and wearing a t-shirt and shorts. By way of reference, during each and every one of Lt. Zagaja's promotions/promotional offers, the Chief of Police was dressed in full uniform or proper business attire. This was an extremely disrespectful, degrading means by which to have such an important conversation.

31. When describing the offer, Chief Bermudez explained that Lt. Zagaja would be required to work a flexible schedule and perform the duties of the Assistant Chief, while being compensated less than she would have been compensated had she not been demoted in the first place.

32. Additionally, Chief Bermudez informed her that he planned to promote then Deputy Chief Horton to Assistant Chief, but he would continue to do the Deputy Chief duties while Lt. Zagaja would be responsible for the Assistant Chief duties.

8

33. Chief Bermudez advised the Plaintiff that he needed an answer by July 8, 2013. Lt. Zagaja reminded him that she was away the following week until July 16, 2013 and needed some time to think about it.

34. Upon Plaintiff's return to work on July 16, 2013, Chief Bermudez called her into his office at the beginning of her tour and asked her for an answer. She indicated that she needed additional time. Chief Bermudez insisted that she provide an answer immediately.

35. At this point, the command staff had been short one person for more than three (3) years. As there was clearly no new urgency in command staffing, Chief Bermudez insisting on a quick turnaround was another form of bullying and retaliation.

36. On July 18, 2013, Lt. Zagaja sent an email to Chief Bermudez requesting a time to discuss and negotiate the duties and benefits regarding the position. After almost a month without responding to Plaintiff's email, Chief Bermudez responded on August 13, 2013. Rather than engaging in any negotiation, he simply responded by restating the exact offer he made on July 5, 2013:

> Hey Deb,
>
> I am in receipt of your e-mail dated July 18, 2013.  To reiterate the contractual offer was:
> a. Position of Deputy Chief;
> b. Contract length to be determined by the Village Board, I will attempt to secure a 2-3 year contract if possible;
> c. Salary of approximately $190K including longevity and shift differential;
> d. Flexible work schedule would be required;
> e. The duties to be performed would include:
>     i. Internal Investigations Administrator
>     ii. Records Manager
>     iii. Medical Review – LOD injuries
>     iv. Attend various meetings
> f. Due to budgetary constraints this is all that can be offered at this time.  Please respond by e-mail by September 1, 2013 with your decision.

9

37. The offer by Chief Bermudez was retaliatory because:

   a. Chief Bermudez knew that Lt. Zagaja was on vacation from August 18, 2013 until the evening of September 2, 2013 as vacations are picked one year in advance;

   b. Chief Bermudez would not negotiate with Lt. Zagaja on any of the points, even though males and/or individuals who have not filed claims against the Village have been able to negotiate their contracts. In fact, Chief Bermudez himself had been able to negotiate his Deputy Chief contract so that he would automatically be promoted to Assistant Chief within three (3) months of being Deputy Chief.

   c. Flexible work schedule is punitive in nature as it would require Lt. Zagaja to work changing day and night tours, as well as weekends, at the whim of Chief Bermudez.  No other police officer, let alone command staff chief, works such a schedule. In fact, Chief Bermudez is compensated a full eight hours when he works on a day off regardless of how many hours he works.

   d. The offered salary of $190,000 was less than what Lt. Zagaja would have been making had she not been demoted and remained in the position.

   e. Chief Bermudez claimed budgetary constraints, but at the same time, the male Deputy Chief was to be promoted to Assistant Chief with a raise.

38.  On September 3, 2013, Lt. Zagaja emailed Mayor Kennedy requesting a meeting to discuss Bermudez's offer.

39. On September 3, 2013, Kennedy responded that he will contact the attorneys and get back to her.  Kennedy never responded to Zagaja.

40. On or about September 12, 2013, Attorneys for the Village offered the Deputy Chief

10

position to male Lieutenant Christopher Barrella, without the specification of a flexible schedule or the duties required of the Assistant Chief. Lt. Barrella opened negotiations regarding the position.

41. On or about September 26, 2013, Lt. Barrella was re-offered the position with a $10,000 increase in the salary offered to Lt. Zagaja.

42. Lt. Barrella rejected the position. However, the fact that the Village was able to offer a male candidate more money and without the specification of a flexible schedule months after informing Lt. Zagaja that the budget prevented them from offering her a higher salary is evidence that Lt. Zagaja continues to be discriminated against based on her gender.

43. On January 25, 2012, after filing an EEOC charge, Christopher Barrella filed a lawsuit against the Village of Freeport and former Mayor Andrew Hardwick based on very similar claims to Zagaja's (*Barrella v. Village of Freeport*, 12 CV 0348 (ADS)(WDW). Specifically, and similar to the claims raised by Lt. Zagaja, Barrella alleged race/color discrimination based on the discriminatory behavior displayed by both the Village and former Mayor Hardwick against non-Hispanic Whites. The Defendants are the same as in Zagaja's original pending action (other than Mayor Kennedy and Miguel Bermudez who are only in the current action).

44. From May 1, 2014 to May 21, 2014, Barrella's case went on trial. On May 28, 2014, the Jury returned a verdict in favor of Barrella and against former Mayor Hardwick and the Village of Freeport as to the racial discrimination causes of action. The Jury awarded Barrella back pay damages in the sum of $150,000, front pay damages in the sum of $1 million, and punitive damages against former Mayor Hardwick in the amount of $200,000.

45. The gender discrimination and the retaliation against Zagaja continued when on October 3, 2013, Sgt. Michael Smith was promoted to Administrative Lieutenant and a mere four days later on October 7, 2013 he assumed the duties of the Deputy Chief. He has since been promoted to Deputy Chief and Ray Horton has been promoted to Assistant Chief.

46. When Smith was promoted from a Sergeant to a Lieutenant (in order to be able to fill the duties of the Deputy Chief), he was also given an increase in salary, which was comparable to that which they had been unable to give Zagaja due to the alleged "budgetary constraints."

47. Chief Bermudez' reliance on budgetary constraints in failing to negotiate or work with Lt. Zagaja on the Deputy Chief position is belied by a number of factors. Specifically, since Chief Bermudez claimed budgetary constraints effectively tied his hands, the Village has hired eight (8) new male police officers, some of whom are being compensated with salaries over and above what the PBA contract mandates, and another four have been given conditional job offers. In addition, Chief Bermudez receives compensation of eight hours for times that he works just an hour or so. Kennedy has also hired a Police Department Statistician/Crime Analyst and a consulting firm to assist the current command staff with crime prevention. Finally, as of April 2014 the Village has spent well over $500,000 to fight Lt. Zagaja's claims of discrimination and retaliation and nearly $1,000,000 in legal costs for the similar case of *Barrella v. Village of Freeport*.

48. At the behest of Mayor Kennedy, on December 6, 2013, Lt. Zagaja met with Mayor Kennedy and PBA President Shawn Randall. At the meeting Kennedy informed her that:

    a. She is going to lose the motion regarding the policymaker issue which is pending in her federal lawsuit against the Village for earlier discrimination and retaliation;

    b. Miguel (Bermudez) does not want her on the command staff and offered her something he knew she would not take.

    c. He would not get involved in Bermudez' personnel decisions because he believes in allowing his Police Chief to run his department.

    d. That she should have taken the Deputy Chief position to "get her foot in the door" and then "prove herself." This is particularly ironic for two reasons: Lt. Zagaja had already successfully held the position for three years, and Chief Bermudez had a clause in his Deputy Chief contract that guaranteed him a promotion to Assistant Chief within three months so he did not have to prove himself.

    e. He (Kennedy) wants to hire someone with more experience than Miguel to run the police departments because there is a lot Miguel does not know (as of the filing of this complaint the Village has hired a consulting firm to assist Bermudez), and

    f. She should not retire because she will be bored.

49. It is commonplace within the Freeport Police Department for officers of every rank to receive additional compensation and/or additional termination pay leading up to their retirement in a practice otherwise known as an exit package.

50. At the discretion of the Chief, officers planning to retire may be scheduled to work overtime to cover unmanned tours and/or grant details in addition to being paid for working through their meals. Officers have historically also been permitted to work vacation days and have been compensated for unused sick time. Specifically, under Chief Bermudez, a male Sergeant,

13

who had not filed a lawsuit against the Village was assigned numerous overtime details including grant details and Watch Commander vacancies, in addition to being able to work holidays so he could receive time-and-a-half. These benefits resulted in approximately three hundred (300) additional hours in his last year. Another male Sergeant who had not filed a lawsuit against the Village was promoted to a Lieutenant during his last three years of employment specifically to boost his pension. Yet, he continued to work as a street supervisor because there were no actual Lieutenant/Watch Commander positions vacant.

51. In fact, Former Chief of Police Woodward was given 26 recalls (many in excess of 12 hour days), worked weekends, and was paid for additional sick time. His salary in his last year increased by more than $62,000 to boost his retirement. These changes in benefits and the exit package were approved by Hardwick and Kennedy.

52. In August 2013, Lt. Zagaja emailed Mayor Kennedy seeking to discuss an exit package. Plaintiff separately asked Bermudez to discuss an exit package in an email as well.

53. Mayor Kennedy responded that he would get back to Lt. Zagaja but he never did.

54. In or around November 2013, Lt. Zagaja was told by Lt. Smith that Chief Bermudez would not entertain any type of exit package for her.

55. In fact, rather than work with Lt. Zagaja on an exit package which would amortize the most benefit to the officer, as he has with other male officers and/or officers who had not filed claims against the Village, Chief Bermudez did the exact opposite. Chief Bermudez took affirmative steps to keep Lt. Zagaja from receiving additional compensation. For example: on approximately six occasions between December 2013 and January 2014, unmanned Watch

14

Commander positions were filled with Sergeants, which would typically be given to a Lieutenant and historically to a Lieutenant planning to retire; Chief Bermudez instituted a new policy that Lieutenants are not permitted to work any grant details or summer "Woodcleft" details, which historically have been fairly distributed to Lieutenants and Sergeants, save for one such overtime "Woodcleft" detail having been given to a junior Lieutenant who was planning to retire; and Chief Bermudez would not agree to allow Lt. Zagaja to work more than one scheduled vacation day despite officers historically being permitted to work five vacation days per year.

56. In March 2014, Lt. Zagaja was informed that two male supervisors were contemplating retiring.  As part of their retirement they approached Chief Bermudez to seek an exit package.

57. Upon information and belief, Bermudez informed them that he would discuss an exit package once Lt. Zagaja retired.

58. On March 27, 2014, Lt. Zagaja informed the command staff that she would not be retiring in August 2014.

59. In retaliation for her claims, Chief Bermudez purposefully failed to timely provide Lt. Zagaja with a subpoena that was served for her at the Freeport police desk. Specifically, on April 14, 2014 a subpoena commanding Lt. Zagaja to appear on May 1, 2014 in Federal District Court before Honorable Judge Spatt in the aforementioned case of *Barrella v. Freeport*, was served in the presence of Chief Bermudez, accepted by a police officer, and subsequently brought to Deputy Chief Horton. Over the next week, Lt. Zagaja proceeded to have conversations with all three members of the command staff and they were all aware of the subpoena and that it had been served. Nonetheless, they willfully kept it from Lt. Zagaja and failed to notify her, which is contrary to

15

standard procedure. However, PO Shawn Randall, also commanded to testify in said case, was notified by Lt. Smith within days.

60. On June 2, 2014, Lt. Zagaja received an email from Lt. Smith stating that Freeport Deputy Mayor and Village Trustee Carmen Pineyro, who is female, wanted to meet with all female officers on June 12, 2014 to address any concerns they may have.

61. During that meeting, the female officers discussed their concerns, Pineyro discussed what she could do to assist, and Pineyro stated that the Village of Freeport discriminates against women.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF 42. U.S.C. §§1981, 1983 *et. seq.*

62. Plaintiff was discriminated against due to her race, gender and in retaliation for complaints of discrimination.

63. This discrimination has revealed itself in harassment, a hostile work environment, her demotion, the failure to promote/hire her into a command staff position, and retaliation.

64. Defendants Hardwick, Kennedy and Bermudez, respectively, acted under color of state law when each condoned various treatments which effected Plaintiff's demotion, a failure to promote, and retaliation. Each did so in whole or in part because of Plaintiff's race, gender and in retaliation for her complaints of race and gender discrimination.

65. This is in direct violation of 42. U.S.C. §§1981 *et. seq.* as to retaliation for her race claims and, 1983 *et. seq* as to race, gender, and retaliation.

16

66. As a result of these illegal actions, Plaintiff has been damaged by having lost wages and benefits, loss of prestige and standing, and loss of potential pension benefits. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

### AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### FOR VIOLATION OF TITLE VII

67. Plaintiff was discriminated against due to her gender, race and/or color and in retaliation for complaining of the disparate treatment she receives as a female employee for Defendants.

68. This discrimination has revealed itself in harassment, a hostile work environment, her demotion, and the failure to promote/hire her into a command staff position.

69. This is in direct violation of Title VII ("Civil Rights Act of 1964, as amended).

70. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since her demotion and failure to promote. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### FOR VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

71. Plaintiff was discriminated against on account of her gender, race and/or color and in retaliation for complaining of the disparate treatment she receives as a female employee for Defendants.

72. This discrimination has revealed itself in harassment, a hostile work environment, her demotion, loss of pay and the failure to promote/hire her into a command staff position.

73. This is in direct violation of the New York State Human Rights Law, Executive Law § 290 et. seq.

74. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since her demotion and failure to promote. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## AS AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
## FOR RETALIATION IN VIOLATION OF TITLE VII

75. Plaintiff is a white female and was discriminated against due to her race and gender as an employee for Defendants.

76. This discrimination has revealed itself in harassment, a hostile work environment, her demotion, and the failure to promote/hire her into a command staff position.

77. Plaintiff complained about gender and race discrimination.

78. Plaintiff was subjected to retaliation for her complaints in the form of harassment, a hostile work environment, demotion, loss of pay, and the failure to promote/hire her into a command staff position.

79. This is in direct violation of Title VII ("Civil Rights Act of 1964, as amended").

80. As a result of this illegal action, Plaintiff has been damaged by having lost wages and

benefits since her demotion and failure to promote. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

### AS AND FOR PLAINTIFF'S FIFTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### FOR RETALIATION IN VIOLATION OF
### THE NEW YORK STATE HUMAN RIGHTS LAW

81. Plaintiff was discriminated against on account of her race, color, gender, and in retaliation for complaining about discrimination.

82. This discrimination has revealed itself in harassment, a hostile work environment, her demotion and the failure to promote/hire her into a command staff position.

83. Plaintiff complained about gender and race discrimination.

84. Plaintiff was subjected retaliation for her complaints in the form of harassment, a hostile work environment, demotion, loss of pay, and the failure to promote/hire her into a command staff position.

85. This is in direct violation of New York State Human Rights Law, Executive Law § 290 et seq.

86. As a result of this illegal action, Plaintiff has been damaged by having lost wages and benefits since her demotion and failure to promote. Additionally, Plaintiff has been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment on her first, second, third, fourth, and fifth causes of action directing Defendant to compensate Plaintiff for her economic loss, humiliation, embarrassment, physical and emotional distress, and mental anguish caused by Defendants' violations of the law alleged in this Complaint. Plaintiff also seeks an award of punitive damages where warranted that are commensurate with Defendants' ability to pay and so as to deter Defendants' future wanton, willful and malicious acts as outlined in the Complaint. Plaintiff also seeks costs and disbursements of this action, including reasonable attorney's fees and costs, and any such other and further relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

DATED:   February 27, 2015
         Garden City, NY 11530

                                        _/s/ Sara Wyn Kane_____
                                        Sara Wyn Kane (SK-6390)
                                        Robert J. Valli, Jr. (RV-9995)
                                        Valli Kane & Vagnini, LLP
                                        600 Old Country Road, Suite 519
                                        Garden City, NY 11530
                                        516-203-7180

20