**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEBBIE ZAGAJA

                            Plaintiff,

         v.

VILLAGE OF FREEPORT, *et al.*,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.: 2:15-cv-1017 (JFB)(SIL)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**VALLI KANE & VAGNINI LLP**

Robert J. Valli, Jr.
rvalli@vkvlawyers.com
Matthew L. Berman
mberman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiff*

# Table of Contents

**Table of Authorities**…………………………………………………...……………….…ii

**PRELIMINARY STATEMENT** ........................................................................ 1

**STATEMENT OF FACTS** .............................................................................. 2

**RELEVANT PROCEDURAL HISTORY** ........................................................ 2

**STANDARD OF REVIEW** ............................................................................. 3

**ARGUMENT** .................................................................................................. 4

**I.   Summary Judgment On Plaintiff's Gender Discrimination Claims Should Be Denied**
…………………………………………………………………………………..4

   A   Plaintiff Suffered At Least One Adverse Employment Action .............................. ……….5

     *1   Defendants' Refusal To Promote Plaintiff To Administrative Lieutenant Is An Adverse Employment Action.* ................................................................................... 5

     *2   Defendants' Decision Not to Allocate Discretionary Overtime to Plaintiff Is An Adverse Employment Action.* ................................................................................... 6

     *3   Defendants' Decision To Deny Plaintiff "Exit Package" Compensation Is An Adverse Employment Action* .......................................................................... 10

   B   Plaintiff Has Presented Facts That Give Rise To An Inference Of Discrimination. ......... 11

**II.   Summary Judgment On Plaintiff's Retaliation Claim Should Be Denied** ................ 12

   A   Plaintiff Has Established That She Suffered From At Least One Adverse Employment Action ................................................................................................. 12

   B   Plaintiff Has Established The "Severity" Of The Hostile Work Environment .................. 13

**III.   Summary Judgment On Plaintiff's NYSHRL Claims Should Be Denied.** ................. 17

**IV.   Summary Judgment on Plaintiff's §1983 Claim Should Be Denied** ........................... 18

  **CONCLUSION** ......................................................................................... 21

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................... 4
*Annis v. Cty. of Westchester*,
    136 F.3d 239 (2d Cir. 1998)....................................................................... 18
*Barrella v. Village of Freeport*,
    No. 12-CV-0348 (ADS)(WDW) (E.D.N.Y.)..............................................16
*Bowen-Hooks v. City of N.Y.*,
    13 F. Supp. 3d 179 (E.D.N.Y. 2014) ...................................................... 4, 5
*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012)......................................................................... 4
*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011)......................................................................... 3
*Cipolla v. Cty. of Rensselaer*,
    129 F. Supp. 2d 436 (N.D.N.Y. 2001) ..................................................... 20
*Davis v. Lynbrook Police Dep't*,
    224 F. Supp. 2d 463 (E.D.N.Y. 2002) ..................................................... 19
*Demoret v. Zegarelli*,
    451 F.3d 140 (2d Cir. 2006)................................................................. 18, 19
*Dillon v. Ned Mgmt., Inc.*,
    85 F. Supp. 3d 639 (E.D.N.Y. 2015) ....................................................... 14
*Ellis v. Century 21 Dep't Stores*,
    975 F. Supp. 2d 244 (E.D.N.Y. 2013) ..................................................... 12
*Feingold v. N.Y.*,
    366 F.3d 138 (2d Cir. 2004)...................................................................... 19
*Frisenda v. Inc. Vill. of Malverne*,
    775 F. Supp. 2d 486 (E.D.N.Y. 2011) ..................................................... 19
*Galabya v. N.Y. City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000)........................................................... 6, 11, 13
*Gentile v. Potter*,
    509 F. Supp. 2d 221 (E.D.N.Y. 2007) ..................................................... 10
*Gorzynski v. JetBlue Airways Corp.*,
    596 F.3d 93 (2d Cir. 2010)........................................................................ 14
*Hayes v. N.Y. City Dep't of Corr.*,
    84 F.3d 614 (2d Cir. 1996)..........................................................................4
*Henry v. Wyeth Pharm., Inc.*,
    616 F.3d 134 (2d Cir. 2010)........................................................................ 5
*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010)................................................................. 12, 19
*Hubbard v. Total Commc'ns, Inc.*,
    347 F. App'x 679 (2d Cir. 2009) .............................................................. 12
*Hunter v. St. Francis Hosp.*,
    281 F. Supp. 2d 534 (E.D.N.Y. 2003) ................................................ 11, 12

*Jeffes v. Barnes*,
   208 F.3d 49 (2d Cir. 2000)...................................................................................... 19

*Jones v. Town of E. Haven*,
   691 F.3d 72 (2d Cir. 2012)...................................................................................... 19

*Kauffman v. Maxim Healthcare Servs., Inc.*,
   No. 04-CV-2869 (TCP), 2006 WL 1983196 (E.D.N.Y. July 13, 2006)........................ 9, 16-17

*Lawson v. City of N.Y.*,
   No. 10–CV–5238, 2013 WL 6157175 (E.D.N.Y. Nov. 22, 2013) ......................... 10

*Lewis v. City of Norwalk*,
   562 F. App'x 25 (2d Cir. 2014) ............................................................................ 18-19

*Mack v. Otis Elevator Co.*,
   326 F.3d 116 (2d Cir. 2003)................................................................................... 13-14

*Mandell v. Cty. of Suffolk*,
   316 F.3d 368 (2d Cir. 2003)................................................................................... 11, 20

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)................................................................................... 3

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
   436 U.S. 658 (1978)............................................................................................... 19

*Morris v. Lindau*,
   196 F.3d 102 (2d Cir.1999).................................................................................... 6

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*,
   315 F.3d 171 (2d Cir. 2003)................................................................................... 4

*Petrovits v. N.Y. City Transit Auth.*,
   No. 95-CIV-9872 (DAB), 2002 WL 338369 (S.D.N.Y. Mar. 4, 2002)................... 16-17

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
   591 F.3d 101 (2d Cir. 2010).................................................................................. 3-4

*Richardson v. N.Y. State Dep't of Corr. Servs.*,
   180 F.3d 426 (2d Cir.1999).................................................................................... 13

*Robinson v. Goulet*,
   525 Fed. Appx. 28 (2d Cir. 2013) ......................................................... 6-7, 10, 11

*Rucci v. Thoubboron*,
   68 F. Supp. 2d 311 (S.D.N.Y. 1999)...................................................................... 20, 21

*Ruiz v. Cty. of Rockland*,
   609 F.3d 486 (2d Cir. 2010).................................................................................. 11

*Rule v. Brine, Inc.*,
   85 F.3d 1002 (2d Cir. 1996)................................................................................... 4

*Sclafani v. PC Richard & Son*,
   668 F. Supp. 2d 423 (E.D.N.Y. 2009) ................................................................. 13-14

*Sethi v. Narod*,
   12 F. Supp. 3d 505 (E.D.N.Y. 2014) .................................................................... 10

*Skates v. Inc. Vill. of Freeport*,
   No. 15-CV-1136 (SJF)(AYS), 2017 WL 3017188 (E.D.N.Y. June 28, 2017)........ 19

*Sklaver v. Casso-Solar Corp.*,
   No. 02-CV-9928 (WCC), 2004 WL 1381264 (S.D.N.Y. May 15, 2004)................ 9

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)............................................................................................... 4

*Stern v. Trs. of Columbia Univ.*,
    131 F.3d 305 (2d Cir. 1997)...................................................................... 9, 17

*Treglia v. Town of Manlius*,
    313 F.3d 713 (2d Cir. 2002)......................................................................... 6

*U.S. v. City of N.Y.*,
    717 F.3d (2d Cir. 2013)............................................................................4-5

*Van Zant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996)...................................................................... 17-18

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000)........................................................................... 5

*Zagaja v. Vill. of Freeport*,
    No. 10-CV-03660 (JFB)(SIL) (E.D.N.Y.)………………………………….…...passim

*Zalaski v. City of Bridgeport Police Dep't*,
    613 F.3d 336 (2d Cir. 2010)....................................…………………………….3

**Statutes**

42 U.S.C. § 1981 ................................................................................................ 1
42 U.S.C. § 1983 ............................................................................................. 1, 4
42 U.S.C. § 2000(3) ........................................................................................... 1

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................. 3
Fed. R. Civ. P. 56 ............................................................................................... 1
Fed. R. Civ. P. 56.1………………………………………………………………………..passim

## PRELIMINARY STATEMENT

Plaintiff Debbie Zagaja ("Plaintiff") brings this action against Defendants Miguel Bermudez ("Bermudez") – as both Chief of Police and in his individual capacity – and the Village of Freeport ("Freeport") (collectively "Defendants") asserting violations of 42 U.S.C. § 1981 *et seq.* ("§1981"), 42 U.S.C. § 1983 *et seq.* ("§1983"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(3) *et seq.* ("Title VII"), and the New York State Human Rights Law ("NYSHRL").

This case stems from the hostile work environment, discrimination, and retaliation lawsuit filed by Plaintiff against Defendant Freeport in 2010, *Zagaja v. Vill. of Freeport*, No. 10-CV-03660 (JFB)(SIL) (E.D.N.Y.) (hereinafter, "*Zagaja I*"), which is still pending before the Court. After Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 5, 2010, which culminated in her complaint in *Zagaja I*, Defendants engaged in a pattern and practice of sex discrimination and retaliation against Plaintiff. *See* Pl. Fed. R Civ. P. 56.1 Counter Statement of Facts (hereinafter "CSOF") ¶ 25. In response to this unlawful retaliatory treatment, Plaintiff filed a second Charge of Discrimination with the EEOC on June 14, 2012. *Id.* at ¶ 30. On February 27, 2015, Plaintiff commenced the instant action (hereinafter "*Zagaja II*") alleging sex discrimination and retaliation. *Id.* at ¶ 33.

The instant action is separate and distinct from *Zagaja I* as Plaintiff, here, has alleged that she was (on the basis of her gender and in retaliation for her engagement in protected activities) (i) denied a promotion to an Administrative Lieutenant position; (ii) denied overtime; (iii) denied "exit package" compensation; (iv) and subjected to a retaliatory hostile work environment. *See* Dkt. No. 1. Defendants now move the Court, pursuant to Fed. R. Civ. P. 56, for Summary Judgment on all of Plaintiff's claims.

In support of their Motion for Summary Judgment (the "Motion"), Defendants argue that they should be granted summary judgment on Plaintiff's gender discrimination claim due to: (1)

the absence of an adverse employment action; and (2) the absence of support for an inference of discrimination.  Similarly, Defendants argue that they should be granted summary judgment on Plaintiff's retaliation claim due to the purported absence of an adverse employment action.

As set forth below, Defendants have failed to demonstrate that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Because Defendants have failed to meet that standard, the Motion should be denied.

**STATEMENT OF FACTS**

Plaintiff respectfully refers the Court to Plaintiff's accompanying Fed. R. Civ. P. Rule 56.1 Counter-Statement of Facts for a detailed recitation of the pertinent facts, incorporated herein by reference.

**RELEVANT PROCEDURAL HISTORY**

*Zagaja I*

On May 5, 2010, Plaintiff filed her first charge of discrimination with the EEOC.  *See* CSOF, ¶ 25.  On or about June 12, 2010, Plaintiff received her "Right to Sue Letter" from the EEOC.  *Id*. at ¶ 26.  On August 11, 2010, Plaintiff filed her complaint in *Zagaja I*.  *See Zagaja I*, Dkt. No. 1.  On January 23, 2012, Defendant Freeport moved for summary judgment in *Zagaja I*. *Id*. at Dkt. No. 29.  On August 13, 2012, the Court issued an oral ruling granting in part, and denying in part, Defendant Freeport's motion.  *Id*. at Dkt. No. 47.  On August 21, 2012, Plaintiff filed her amended complaint. *Id.* at Dkt. No. 50.  On November 20, 2012, The Court issued a written Memorandum and Order with respect to the summary judgment motion. *Id.* at Dkt. Entry 11/20/2012.  On December 12, 2012, Defendant Freeport filed a motion for reconsideration. *Id*. at Dkt. No. 74.   On September 30, 2013, Defendant Freeport filed a Motion to Dismiss the amended complaint. *Id*. at Dkt. No. 99.   On June 3, 2015, the Court granted Defendant Freeport's Motion

to Dismiss in part and denied it in part. *Id.* at Dkt. No. 117. Currently, *Zagaja I* is still pending before the Court. *See Zagaja v. Vill. of Freeport*, No. 10-CV-03660 (JFB)(SIL) (E.D.N.Y.).

*Zagaja II*

On February 2, 2015, Plaintiff initiated the instant case by filing the Complaint. *See* COSF, ¶ 30. On June 4, 2015, Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). *See* Dkt. Nos. 18-22. On March 29, 2016, the Court granted in part, and denied in part, Defendants' Motion to Dismiss. *See* Dkt. No. 29. The Motion to Dismiss was denied as to Plaintiff's gender discrimination/hostile work environment and retaliation claims against Defendants, but was granted with respect to Plaintiff's other claims. *Id.* On April 15, 2016, Defendants filed an Answer to Plaintiff's Complaint, *see* Dkt. No. 32, and the parties engaged in discovery, which concluded on April 21, 2017. *See* Dkt. No. 39. On September 3, 2017, Defendants filed the instant motion for summary judgment. *See* Dkt No. 43-48.

## STANDARD OF REVIEW

Summary judgment may only be granted where there is "no genuine dispute as to any material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2d Cir. 2010).

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Reiseck v. Universal Commc'ns of*

*Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Based on these standards, Defendants' motion for summary judgment should be denied in its entirety.

## ARGUMENT

**I.**     **Summary Judgment On Plaintiff's Gender Discrimination Claims Should Be Denied**

To establish a *prima facie* case of gender discrimination under Title VII,[1] a plaintiff must show that: "(1) [she] belonged to a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). "A plaintiff's burden at this stage is minimal." *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 210 (E.D.N.Y. 2014) (citation omitted). "If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-507 (1993)). "If the employer is able to satisfy that burden, the inquiry then

---

[1]     Defendants also engaged in gender discrimination in violation of Section 1983 as discussed below in Section IV.

returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination." *U.S. v. City of N.Y.*, 717 F.3d at 72, 102 (2d Cir. 2013) (citation omitted). "To defeat summary judgment at this stage, 'a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus.'" *Bowen-Hooks*, 13 F. Supp. 3d at 210 (citing *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010)).

Here, Plaintiff has established a *prima facie* case of gender discrimination. Plaintiff, as a female, is a member of a protected class. *See* CSOF, ¶ 35; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 50 (2d Cir. 2000) (being a woman is considered a protected class). Plaintiff, a member of the VFPD for over twenty-five (25) years, was qualified for her position. *See* CSOF, ¶¶ 1-19. She was subjected to at least one "adverse employment action" when Defendants: (1) failed to promote her to an Administrative Lieutenant positon; (2) assigned her less discretionary overtime than similarly-situated male employees; and (3) denied Plaintiff "exit package" compensation. *Id*. at ¶¶ 35-65. Lastly, Plaintiff has also established an inference of discrimination with respect to each of these adverse employment actions because in each instance Defendants treated similarly situated *male* employees more favorably than Plaintiff. *Id.* Defendants, however, only dispute whether Plaintiff was subjected to an adverse employment action and whether there are circumstances that give rise to an inference of discriminatory intent. Because Plaintiff has established the existence of at least one adverse employment action occurring in circumstances giving rise to an inference of discrimination, as set forth below, Defendant's Motion for Summary Judgment should be denied.

    A    <u>Plaintiff Suffered At Least One Adverse Employment Action</u>

        1    *Defendants' Refusal To Promote Plaintiff To Administrative Lieutenant Is An Adverse Employment Action.*

Plaintiff was subjected to an adverse employment action when she was denied a promotion to Administrative Lieutenant. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Here, Defendants do not dispute that Plaintiff was denied a promotion in favor of a male employee — Michael Smith ("Lieutenant Smith"). *See* CSOF, ¶¶ 66-69. Nor do they dispute that Plaintiff was more qualified for the Administrative Lieutenant position—a position above Lieutenant—than Lieutenant Smith because she had more experience and seniority than him. *Id.* at ¶¶ 68-69. Thus, the only remaining question is whether denying Plaintiff a promotion constitutes an adverse employment action. Yet it is well-settled within the Second Circuit that "failure to promote falls within the core activities encompassed by the term 'adverse actions.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)) (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"). Therefore, Defendants have failed to establish that they are entitled to judgment as a matter of law due to the absence of an adverse employment action suffered by Plaintiff. Defendants' refusal to promote Plaintiff into the position of Administrative Lieutenant, alone, is sufficient to satisfy the adverse employment action element of Plaintiff's Title VII claim.

2        *Defendants' Decision Not to Allocate Discretionary Overtime to Plaintiff Is An Adverse Employment Action.*

Plaintiff was subjected to an adverse employment action on the basis of her gender when she received significantly less discretionary overtime than her similarly situated male coworkers. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya*, 202 F.3d at 640; *see Robinson v.*

*Goulet*, 525 Fed. Appx. 28, 31 (2d Cir. 2013) ("The loss of overtime hours or pay on the basis of [sex] violates Title VII.") (quotation omitted).

Here, Defendants argue that Plaintiff received more *total* overtime hours than other similarly situated male employees. Defendants, however, do not dispute that there are two (2) distinct types of overtime available to officers — contractual (*i.e.* non-discretionary) and discretionary. *See* CSOF, ¶¶ 36-43.[2]

Contractual overtime hours ("COH") are hours compensated at the overtime premium rate when employees perform duties that are expressly authorized in advance, by their collective bargaining agreement ("CBA"). *Id.* at ¶¶ 28-43. This compensation is completely independent of any discretionary overtime specifically assigned by Defendants. *Id.* at ¶¶ 36-43. For example, if a Lieutenant was unable to take a meal break, they were contractually compensated for the break time at the overtime rate under the CBA. *Id.* at ¶¶ 38-40, 43. Unused sick days, worked holidays, worked vacation days, blood donations, and mandatory trainings are also COH as they are considered overtime, but are not assigned to Lieutenants by Defendants. *Id.* at ¶¶ 38, 41-43.

Discretionary overtime hours ("DOH"), on the other hand, are meted out when shifts are assigned to Lieutenants at Defendants' discretion. *Id.* at ¶¶ 36-37. Thus, DOH hours cannot be worked without Defendants specifically assigning overtime shifts to Lieutenants. *Id.* DOH shifts include: "details," "tours," "duties," "grants," "parades," "manpower," "festivals," "ops," "snow storms," and "off duty involvement." *Id.* Thus, Defendants had no discretion concerning whether Plaintiff received COH, but had complete control over whether she received DOH. *Id.*

---

[2] Under the CBA, overtime hours, whether contractual or discretionary, may be accrued and paid at a later date. *See* CSOF, ¶ 42. When a Lieutenant chooses to receive payment for accrued time, the overtime hours are accounted for as compensation received during the year in which the recipient elects to receive payment. *Id.*

In examining Plaintiff's DOH, a stark contrast is revealed between the amount of DOH assigned to Plaintiff versus that assigned to her male comparators. In 2009, Defendants' male Lieutenants Christopher Barrella, Paul Jurgens, Kevin Noll, Michael Smith, and Edward Thompson (collectively the "Male Lieutenants"), were assigned, on average, approximately 28.69 hours of DOH. *Id.* at ¶ 44. In contrast, during 2009 Plaintiff was assigned zero (0) hours of DOH. *Id.* In 2011,[3] Male Lieutenants were assigned, on average, approximately 23.88 hours of DOH and Plaintiff was only assigned, approximately 6.75 hours of DOH. *Id.* at ¶ 46. In 2012 the Male Lieutenants were assigned, on average, approximately 40.69 hours of DOH and Plaintiff was assigned approximately 36 hours of DOH. *Id.* at ¶ 47.

In contrast, from 2013-2015 Plaintiff was assigned *more* DOH than the Male Lieutenants. *Id.* However, the increase in DOH assigned to Plaintiff was a result of remediation by Defendants that occurred only after *she filed her charge of discrimination and retaliation* with the EEOC on June 14, 2012. *Id* at ¶ 51. Defendants' ability to exercise control over DOH *after* Plaintiff filed her charge proves that they had the same degree of control before remediation and evidences Defendants' discriminatory intent—in refusing to assign DOH to Plaintiff during 2009-2012.

In 2013, Plaintiff was assigned approximately 54 hours of DOH, while the Male Lieutenants were only assigned, on average, approximately 19.05 hours of DOH. *Id.* at ¶ 48. In 2014, Plaintiff was assigned approximately 81 hours of DOH while Male Lieutenants were only assigned, on average, approximately 22.40 hours of DOH. *Id.* at ¶ 49. In 2015, Plaintiff was assigned approximately 76.05 DOH while the Male Lieutenants were only assigned, on average, approximately 19.50 DOH. *Id.* at ¶ 50. Statistically, this is an approximate 58.50% decrease in

---

[3]    2010 was an anomaly year where Plaintiff received more DOH than the Male Lieutenants because she was demoted from Deputy Chief to Lieutenant and forced to train her successor, Defendant Bermudez. *See* COSF, ¶ 45.

DOH for the Male Lieutenants and an approximate 72% increase in DOH for Plaintiff after she filed her Charge of Discrimination with the EEOC.

Defendants also claim that Plaintiff did not suffer an adverse employment action regarding "Sandy-related" overtime because it was assigned to Lieutenants based upon which of them had worked the lowest total amount of overtime in 2012. *See* Defs.' Br., p. <u>But this is pretext</u>. Defendants' Rule 56.1 Statement lists the following Lieutenants in order of highest total 2012 overtime earner to lowest: Paul Jurgens, Debbie Zagaja, Edward Thompson, Kevin Noll, and Christopher Barrella. Defs.' Fed. R. Civ. P. 56.1 Statement ¶ 57. Following Defendants' argument, Lieutenant Jurgens should have been the last Lieutenant to receive "Sandy-related" overtime since he had the highest total of overtime in 2012. *Id.* However, on November 2, 2012 — after Plaintiff had returned to work from her leave — Lieutenant Jurgens received 14.25 hours of "Sandy-related" overtime. *See* CSOF, ¶¶ 58-63. Despite working less total overtime hours than Lieutenant Jurgens in 2012, Plaintiff did not receive any "Sandy-related" overtime. *Id.* at ¶ 62. Thus, Plaintiff was discriminatorily "skipped-over" for "Sandy-related" overtime in favor of the Male Lieutenants. *See Kauffman v. Maxim Healthcare Servs., Inc.*, No. 04-CV-2869 (TCP), 2006 WL 1983196, at *7 (E.D.N.Y. July 13, 2006) ("[d]efendant's failure to follow its own . . . policy . . . weighs in favor of [p]laintiff's argument that this proffered reason for his termination was simply a pretext for unlawful discrimination and retaliation") (citations omitted); *Sklaver v. Casso-Solar Corp.*, No. 02-CV-9928 (WCC), 2004 WL 1381264, at *9 (S.D.N.Y. May 15, 2004) ("an employer's departure from its own policies and standards 'can raise a question as to the good faith of the process where the departure may reasonably affect the decision'") (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997)).

Defendants' decision to deny Plaintiff compensation for DOH and "Sandy-related" overtime in favor of male employees constitutes an adverse employment action. It is well-settled law within the Second Circuit that "the denial of overtime is a materially adverse action." *Gentile v. Potter*, 509 F. Supp. 2d 221, 241 (E.D.N.Y. 2007); *see Robinson*, 525 Fed. Appx. at 31 ("The loss of overtime hours or pay on the basis of [sex] violates Title VII.") (quotation omitted); *Sethi v. Narod*, 12 F. Supp. 3d 505, 528 (E.D.N.Y. 2014) (holding that the denial overtime constitutes an adverse employment action); *Lawson v. City of N.Y.*, No. 10–CV–5238, 2013 WL 6157175, at *7 (E.D.N.Y. Nov. 22, 2013) (noting that the denial of overtime pay is an adverse employment action). Thus, Defendant has failed to meet its burden of demonstrating entitlement to summary judgment as a matter of law on the issue of whether Plaintiff suffered an adverse employment action.

3      *Defendants' Decision To Deny Plaintiff "Exit Package" Compensation Is An Adverse Employment Action*

In addition to the two adverse employment actions identified in Sections I(A)(1)-(3), above, Defendants' decision not to pay Plaintiff "exit package" compensation constitutes a third adverse employment action.

Defendants do not dispute that Plaintiff was denied an "exit package." *See* CSOF, ¶¶ 64-65. Similarly, Defendants do not dispute that similarly situated male employees were paid "exit package" compensation. *Id.* at ¶ 64. For example, Lieutenant Jurgens, a male, was permitted to increase his DOH from 2011 to 2012 (his last full year of employment) by approximately 426%. *Id.* He was also allowed to increase the holiday shifts he worked from 3.50 for a total of 21.25 hours in 2011 to 5.50 for a total of 32.75 hours in 2012. *Id.* Plaintiff's discretionary overtime hours, on the other hand, *decreased* from 2014 to 2015 (her last full year of employment) by approximately 5.6%. *Id.* Unlike Lieutenant Jurgens, Plaintiff was not permitted to increase her

DOH (as set forth above) and holiday shifts: she worked the same amount of holiday shifts in 2014 and 2015 (5 shifts) and had a decrease of .5 hours of holiday overtime. *Id.*

Thus, the only remaining question is whether denying Plaintiff an "exit package" constitutes an adverse employment action. "[A] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya*, 202 F.3d at 640. Defendants' decision to deny Plaintiff an "exit package" resulted in a material decrease in Plaintiff's compensation. *See* CSOF, ¶ 64. "It is well settled [in the Second Circuit] that the denial of a bonus or a merit increase do constitute a material adverse change." *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 545 (E.D.N.Y. 2003); *see Robinson*, 525 Fed. Appx. at 31 ("The loss of overtime hours or pay on the basis of [sex] violates Title VII.") (quotation omitted). Therefore, the undisputed facts demonstrate that Plaintiff suffered an adverse employment action when she was denied "exit package" compensation.

B  <u>Plaintiff Has Presented Facts That Give Rise To An Inference Of Discrimination.</u>

The adverse employment actions that Plaintiff suffered give rise to an inference of discrimination. "A showing of disparate treatment-that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group-is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (citing *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Here, as argued under Sections I(A)-(C), Plaintiff has established, as a female, she was treated less favorably than similarly situated male employees regarding promotions, overtime distribution, and "exit package" compensation *See* CSOF, ¶¶ 35-69. Therefore, because Plaintiff was treated less favorably than similarly situated males with respect to *each* of the adverse employment actions she was subjected to, Plaintiff has demonstrated that the undisputed facts give rise to an inference of discrimination.

## II. **Summary Judgment On Plaintiff's Retaliation Claim Should Be Denied**

Defendants' request for summary judgment dismissing Plaintiff's retaliation claim should be denied. As set forth below, Plaintiff suffered at least one adverse employment action, including a "severe" hostile work environment.

### A  Plaintiff Has Established That She Suffered From At Least One Adverse Employment Action.

Defendants have failed to demonstrate that they are entitled to summary judgment as a matter of law on Plaintiff's retaliation claim.  In order to establish a *prima facie* case of retaliation a "plaintiff must establish (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted).  Plaintiff has established that she: (1) participated in a protected activity (*see* CSOF, ¶¶ 20-32; *see also Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 680–81 (2d Cir. 2009) ("Protected activity includes opposition to a discriminatory employment practice or participation in any investigation, proceeding, or hearing under Title VII.")); (2) Defendants knew of Plaintiff's participation (*see* CSOF, ¶¶ 20-30, 71; *see also Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 283 (E.D.N.Y. 2013) (to prove that the employer had knowledge "the plaintiff must establish that the employer understood, or could reasonably have understood, that the plaintiff's opposition was directed at prohibited conduct.")); (3) Plaintiff experienced at least one (1) adverse employment action (*see* CSOF, ¶¶ 35-69); and (4) there is a causal connection between Plaintiff's protected activity and the adverse employment actions she suffered  (*id.* at ¶¶ 70-74; *see also Hunter* 281 F. Supp. 2d at 547 ( "[a] causal connection between the adverse action and the protected activity, is established where a plaintiff offers, (1) direct proof of retaliatory animus directed against the plaintiff, (2) disparate treatment of similarly situated employees, or (3) that

the retaliatory action occurred close in time to the protected activities.")). Here, Defendants only dispute that Plaintiff suffered an adverse employment action.

As set forth in Section I(A), above, Plaintiff was subjected to an adverse employment action when she was: (1) denied a promotion to Administrative Lieutenant; (2) assigned less discretionary overtime than similarly situated male Lieutenants; and (3) denied "exit package" compensation. *See Galabya*, 202 F.3d at 640 ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment"); CSOF, ¶¶ 35-69. In addition to the three adverse employment actions identified above, Plaintiff's retaliation claim is also supported by the hostile work environment that she endured as a result of engaging in protected activity, set forth in Section II(B), below.

B      <u>Plaintiff Has Established The "Severity" Of The Hostile Work Environment.</u>

Plaintiff has demonstrated that she was subjected to a retaliatory hostile work environment because she engaged in protected activities. To establish a *prima facie* case of retaliatory hostile work environment, a plaintiff must first satisfy the elements of a traditional claim of retaliation. *See Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 428 (E.D.N.Y. 2009). Next, a plaintiff must satisfy a "severity" element in order for a hostile work environment to rise to a level such that it constitutes an adverse employment action. *Id.* at 436 ("uncheck[ed] retaliatory co-worker harassment, if sufficiently sever, may constitute adverse employer action so as to satisfy [that prong] of retaliation *prima facie* case.") (quoting *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 444 (2d Cir.1999), abrogated on other grounds by *Burlington N.*, 548 U.S. at 68 (alterations in original). To satisfy the severity element, a plaintiff must establish "'that (1) the harassment Plaintiff was subjected to was sufficiently severe . . . to alter the conditions of her work environment and (2) that a specific basis exists for imputing the conduct that created the hostile

work environment to the employer.'" *Sclafani*, 688 F. Supp. at 430 (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003).

As stated in Section II(A), Plaintiff has satisfied all of the elements of a *prima facie* case of retaliation. Moreover, Defendants do not dispute elements one (1), two (2), and four (4) of Plaintiff's *prima facie* case of retaliation. Nor do they dispute that a specific basis exists for imputing the retaliatory harassment to them. Thus, Plaintiff must only establish that a triable issue of material fact exist to whether the retaliatory harassment was "sufficiently severe . . . to alter the conditions of her work environment." 688 F. Supp. at 430 (quoting *Mack*, 326 F.3d at 122).

"To analyze [the severity element of a] a hostile work environment claim, we are required to look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citation omitted); *see also Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 655 (E.D.N.Y. 2015) ("the totality of the circumstances, viewed from the perspective of a reasonable person in the plaigantiff's position, considering all the circumstances including the social context in which particular behavior occurs and is experienced by its target") (quotation omitted). Thus, each incident of retaliatory harassment must not be viewed in a vacuum, but as a whole because they are continuous and concerted over a period of more than five (5) years:

    i.    Immediately following the filing of *Zagaja I*, Chief Bermudez ceased requesting that Plaintiff join his command staff. *See* CSOF, ¶ 73.

    ii.    On or around June 26, 2010, Plaintiff was designated the VFPD's record management officer ("record officer"). *Id.* at ¶ 74. Notably, the VFPD's records were always handle by the clerical department and not Lieutenants. *Id.* at ¶ 75. Defendants mischaracterize Plaintiff's deposition testimony to support their contention that previous *officers* held the record officer position because they

performed the duties of the position. Plaintiff stated in her deposition that there was never a record officer prior to her appointment. *Id.* at ¶ 76. Indeed, while some officers may have performed some of the duties of record officer, they were never entitled as such, nor tasked with the same responsibilities as Plaintiff. *Id.* at ¶ 77. Furthermore, when Plaintiff was required to perform her duties as record officer she was relieved of her watch commander duties, which required replacement by another officer. *Id.* at ¶ 78. Lastly, Defendants proffer that Plaintiff chose to carry the file boxes. Indeed, Plaintiff was never specifically ordered to carry file boxes, however, she was required to bring the file boxes to the second floor and carrying the boxes was the only means of doing so. *Id.* at ¶ 79.

iii.    On or about August 2010, Defendants ordered a financial background check on Plaintiff, which no other officer was subjected to. *Id.* at ¶ 80.

iv.    As stated above, after July 1, 2010, Plaintiff's discretionary overtime hours were decreased by almost ninety-nine percent (99%) and remained materially diminished until she filed her second Charge of Discrimination on June 14, 2012. *Id.* at ¶ 72.

v.    During September 2010, Plaintiff's boots were thrown out by Officer Cynthia Cummings ("Officer Cummings"). *Id.* at ¶ 81. Despite the disciplining of Officer Cummings, Defendants purposefully delayed Plaintiff's reimbursement for her discarded boots. *Id.* at ¶ 82.

vi.    In 2011, Plaintiff's tour schedule was changed for the 2012 year so that her shifts would overlap with Officer Cummings, when Cummings could have been assigned to overlap with Lieutenant Jurgen's tour instead. *Id.* at ¶ 83. Additionally, in 2011, Defendants purposefully switched Officer Cummings into tours that would overlap with Plaintiff's. *Id.* During these shift overlaps, Officer Cummings frequently harassed Plaintiff by making comments towards her, leaving notes on her locker, and displacing her belongings. *Id.* at ¶ 84. As a result of Officer Cummings' abusive treatment, Plaintiff hid in the bathroom during the shift overlaps in an attempt to avoid Cummings. *Id.* at ¶ 85.

vii.    On February 10, 2012, Deputy Chief Horton ordered Plaintiff to assume the role of street supervisor while Sergeant Jockers was on a light duty accommodation. *Id.* at ¶¶ 52, 86. However, no other Lieutenant has ever been specifically ordered to work as a street supervisor. *Id.* at ¶¶ 53-54, 87.

viii.    While performing the role of street supervisor, Defendant Bermudez purposefully ordered shirts, designated for Plaintiff, which were inferior to those required pursuant to Defendants' specifications. *Id.* at ¶ 88. Defendants contend that the order was placed by a clerical staff member, but Defendant

Bermudez was the one who was required to approve of all orders. *Id*. at ¶¶ 88, 90. Furthermore, no other officer has ever received white shirts instead of blue shirts or of the low quality that Plaintiff received because White shirts made officers more of a target for assailants. *Id*. at ¶¶ 89, 91.

ix. On February 15, 2011, Defendants sent an invitation to a Black History Celebration for the Year of the Woman to Plaintiff's office mailbox. *Id*. at ¶ 92. This letter was deliberately sent to disrespect Plaintiff because it was addressed to "Deputy Chief," but Plaintiff was no longer the Deputy Chief due to her demotion. *Id*. at ¶ 93. The letter was also signed "your humble servant" which was indicative that it was from the mayor's office. *Id*. at ¶ 94. Plaintiff has never received correspondence signed by the mayor's office in this manner prior to her engagement in protected activities. *Id*. Furthermore, no other officer received said invitation. *Id*. at ¶ 95.

x. In 2011, Defendant Bermudez ordered Plaintiff to rewrite the domestic violence policy. *Id*. at ¶ 96. Indeed, Lieutenants have been ordered to re-write policies, however, never policies that were as long and complex as the domestic violence policy — approximately thirty (30) pages. *Id*. at ¶¶ 97-98. Plaintiff was required to re-write the policy during her work hours. *Id*. at ¶ 99. Despite Plaintiff's serious efforts in re-writing the policy, Defendants never presented the policy and still use the former 2008 policy. *Id*. at ¶¶ 100-101.

xi. On January 12, 2012, in response to Plaintiff legally taped recording of her fellow officers and supervisors, Defendants issued an order restricting the entire police department from recording one another. *Id*. at ¶ 102. However, Plaintiff's allegation is not that only Plaintiff was restricted from tape recording, but that only the Police department was restricted, while other Village departments were not. *Id*. at ¶ 103.

xii. In April 2014, Defendants purposefully failed to timely provide Plaintiff with a subpoena to appear in federal court for *Barrella v. Village of Freeport*, No. 12-CV-0348 (ADS)(WDW) (E.D.N.Y.). *Id*. at ¶ 104. Defendants contend that she did not suffer an adverse employment action because Plaintiff ultimately received the subpoena and testified. *See* Defs.' Br., 17-18. Indeed, Plaintiff received the subpoena, however, she was not orally notified before receiving the paper copy like her coworker, Officer Randall. *See* CSOF, ¶ 104. Instead, she only received notification of the subpoena when she checked her mailbox on April 18, 2014—four (4) days after it was served upon the Village Clerk's Office. *Id*. at ¶ 106. Moreover, it is Defendants' common practice to immediately notify a subpoenaed officer of a federal subpoena that is served upon Defendants. *Id*. at ¶ 107; *see also Kauffman*, 2006 WL at *7 ("Defendant's failure to follow its own . . . policy . . . weighs in favor of Plaintiff's argument that this proffered reason for his termination was simply a

pretext for unlawful discrimination and retaliation") (citations omitted); *Petrovits v. N.Y. City Transit Auth.*, No. 95-CIV-9872 (DAB), 2002 WL 338369, at *8 (S.D.N.Y. Mar. 4, 2002) ("[f]ailure to follow internal procedures can . . . 'be evidence of pretext'") (quoting *Stern*, 131 F.3d at 313).

xiii.    Additionally, as argued above, Plaintiff was denied a promotion to Administrative Lieutenant position and "exit package" compensation. *Id.* at ¶¶ 64-69.

These incidents satisfy the severity standard of a hostile work environment as the retaliation remained continuous and concerted until Plaintiff filed her second Charge of Discrimination on June 14, 2012, in which she alleged Defendants' retaliatory acts. *Id.* at ¶ 30. Additionally the retaliatory hostile work environment continued after the filing of the amended complaint in *Zagaja I* with respect to the denial of overtime, promotion to the Administrative Lieutenant position, and "exit package" compensation. Moreover, these described hostile work environment conditions materially and adversely altered Plaintiff's employment including by: (1) providing, to Plaintiff and to Plaintiff alone, white patrol shirts that were non-compliant with Defendants' color specifications, which made her an easy target for potential assailants, and which were also of inferior quality to those supplied to her colleagues (*id.* at ¶¶ 88-91); (2) requiring Plaintiff to hide in the bathroom to avoid her shift overlap with Officer Cummings (*id.* at ¶¶ 83-85; (3) assigning to Plaintiff new, demeaning duties as record officer (*id.* at ¶¶ 74-79); and (4) requiring Plaintiff to spend an inordinate amount of time with "busywork" drafting and revising a domestic violence policy during her workhours. Therefore, there is a genuine issue of material fact regarding whether Defendants abusive behavior rises to the required degree of severity to constitute a hostile work environment.

## III.    **Summary Judgment On Plaintiff's NYSHRL Claims Should Be Denied.**

Plaintiff has presented a genuine issue of material fact regarding her discrimination and retaliation claims under the NYSHRL. As Defendants correctly point out, a violation of Title VII

will also result in a violation under the NYSHRL. Defs. Br., 10; *see Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) ("New York courts require the same standard of proof for claims brought under the Human Rights Law as those brought under Title VII.") (citation omitted). Here, as set forth in Section I, above, Plaintiff has established a *prima facie* case of both discrimination and retaliation under Title VII. Therefore, Plaintiff has also established a *prima facie* case of both discrimination and retaliation under the NYSHRL. And for the same reasons as set forth in Section I, above, Defendants' motion for summary judgment should be denied.

## IV.    **Summary Judgment on Plaintiff's §1983 Claim Should Be Denied.**

Defendants' Motion for Summary Judgment dismissing Plaintiff's §1983 claims should be denied because: (1) Plaintiff has demonstrated that her rights were violated by a "municipal policymaker"; and (2) Defendants have failed to show any genuine dispute of material facts exists as to Defendant Bermudez's status as a "municipal policymaker."

"A 1983 claims has two essential elements: (1) the defendant acted under color of state law and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights on her constitutional rights or privileges." *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Plaintiff has established both elements of a § 1983 claim because Defendant Bermudez was acting under state law when he discriminated and retaliated against Plaintiff and, as a result, Plaintiff was denied her constitutional protections under the Equal Protection Clause. *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) ("§ 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender."): *Lewis v. City of Norwalk*, 562 F. App'x 25, 29 (2d Cir. 2014) ("We have held that a plaintiff may bring a § 1983 claim alleging a violation of the Fourteenth Amendment where '[t]he premise of th [e] lawsuit is that plaintiffs were treated differently—that is, they suffered retaliation—on the basis of their participation in

discrimination investigations and proceedings.'") (quoting *Hicks*, 593 F.3d at 171).[4]  Defendants,

however, only dispute that Defendant Freeport, as a municipality, is not liable for the acts of

Defendant Bermudez because he was not a "final policymaker." *Monell v. Dep't of Soc. Servs. of

City of N.Y.*, 436 U.S. 658, 690 (1978).

Monell holds that municipalities are "persons" for the purposes of claims arising under

1983.  However, "a municipality may only be held liable under Section 1983 'if the deprivation of

the plaintiff's rights under federal law [was] caused by a governmental custom, policy, or usage

of the municipality.'" *Skates v. Inc. Vill. of Freeport*, No. 15-CV-1136 (SJF)(AYS), 2017 WL

3017188, at *8 (E.D.N.Y. June 28, 2017) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d

Cir. 2012)).  "A plaintiff can show a municipal custom, policy or practice by establishing that an

official who is a final policymaker directly committed or commanded the constitutional violation."

*Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).  "Moreover, 'the

official in question need not be a municipal policymaker for all purposes.  Rather, with respect to

the conduct challenged, he must be responsible under state law for making policy in that area of

the [municipality's] business.'"  *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 520

(E.D.N.Y. 2011) (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)) (alterations in original).

Defendants' Motion for Summary Judgment argues that Plaintiff's §1983 claim should be

dismissed because, purportedly, Defendant Bermudez was not a policymaker. Defs. Br., 24.

Defendants' argument must be rejected because: (1) Plaintiff has demonstrated that her rights were

violated by Defendant Bermudez, who was acting as a policymaker for all applicable purposes

---

[4]     Gender discrimination and retaliation are examined under a § 1983 claim in the same manner as Title VII.
*See Demoret*, 451 F.3d at 149 ("[o]nce action under color of state law is established, the analysis for such claims is
similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983
claim, unlike a Title VII claim, can be brought against individuals."); *Feingold v. N.Y.*, 366 F.3d 138, 159 & n. 20 (2d
Cir. 2004) (reasoning that § 1983 equal protection claims parallel Title VII claims).  Here, Plaintiff has established
that she was subjected to gender discrimination and retaliation in violation of 1983 because, as argued under Sections
I and II above, she was subjected to gender discrimination and retaliation in violation of Title VII.

under § 1983 (*see* CSOF, ¶¶ 108-112); and (2) Defendants have failed to proffer *any* evidence to dispute that Defendant Bermudez was acting as a policymaker for the purposes of § 1983.

*First*, Defendant Bermudez, as Chief of Police, was a policymaker for the purposes of § 1983 because he had the authority to create, review, and revise department-wide policies. Here, Defendant Freeport's Chief of Police's duties entailed formulating policies, reviewing policies, revising policies, and implementing new policies. *Id.* at ¶ 110. Bermudez's duties as Chief of Police included managing the personnel and staffing levels of the police department, determining promotions, authorizing personnel to work through (and get paid for) vacation time, and determining whether to pay "exit package" compensation. *Id.* at ¶ 111. Moreover, Defendant Bermudez was responsible for assigning discretionary overtime hours as Chief of Police. *Id.* at ¶ 112. These duties and responsibilities clearly establish that Bermudez was a policymaker for purposes of §1983. *See, e.g., Mandell*, 316 F.3d at 385 (holding that a police commissioner was a policymaker for § 1983 purposes because he had authority to set department wide personnel policies).

*Second*, the instant case is on all fours with *Rucci v. Thoubboron*, 68 F. Supp. 2d 311, 326 (S.D.N.Y. 1999) where, as here, defendants "provided no evidence in any of its voluminous motion papers to challenge the assertion that the defendant was a final policymaker." As a result, the court in *Rucci* denied defendants' summary judgment motion on the plaintiff's § 1983 claim because "the ultimate burden of showing the absence of a genuine issue of material fact resides with the movant" and the movant did not provide any evidence on the issue. *Rucci*, 68 F. Supp. 2d at 326; *see also Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 457 (N.D.N.Y. 2001) (denying summary judgment because the court did not "have sufficient evidence to determine, as a matter of law, whether [the d]efendants had policy making authority in the pertinent areas").

Here, like in *Rucci*, Defendants have provided *no* evidence to dispute the facts offered by Plaintiff which show that Bermudez was a policymaker for the purposes of § 1983. Because Plaintiff has established that Defendant Bermudez was a policymaker for the purposes of § 1983 and Defendants fail to proffer any evidence to the contrary, Defendants' motion for Summary Judgment on Plaintiff's § 1983 claim should be denied.

## CONCLUSION

Accordingly, for all the reasons set forth above, Defendants' Motion for Summary Judgment should be denied in its entirety.

Dated: Garden City, New York
      October 31, 2017

**VALLI KANE & VAGNINI LLP**

By: /s/ *Robert J. Valli, Jr.*

Robert J. Valli, Jr.
rvalli@vkvlawyers.com
Matthew L. Berman
mberman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2017 a true and correct copy of (1) Plaintiff's Response to Defendants' Statement of Undisputed Facts pursuant to Local Rule 56.1 and Plaintiff's Counter-Statement of Undisputed Facts; (2) Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment; (3) Affidavit of Debbie Zagaja in Opposition to Defendant's Motion for Summary Judgment; and (4) the Declaration of Robert J. Valli Jr. served via the Court's ECF Filing system and by e-mail on all counsel of record.

Date:   October 31, 2017

/s/ *Robert J. Valli Jr.*
Robert J. Valli, Jr.